(13 App. Div. 227.)
### YORK HAVEN PAPER CO. et al. v. PLACE.

(Supreme Court, Appellate Division, First Department.   January 15, 1897.)

DISCOVERY—INSPECTION OF BOOKS AND PAPERS.
   An inspection of the books and papers of an assignor for benefit of creditors will be granted in an action to set aside the assignment for fraud, where creditors charge that the assignor's schedules failed to state all his property and assets, and that part of the assets are concealed; and these allegations are supported by affidavits specifying a particular sum withdrawn on a given day, and alleging that there are other entries in the books which will show other fraud and concealment.

Appeal from special term, New York county.

Action by the York Haven Paper Company and others against Josiah W. Place, as assignee of the firm of Walter & Place, impleaded with others, to set aside the assignments as in fraud of creditors.   From an order granting plaintiffs a discovery and inspection of the books and papers of the assignor, the assignee appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Chas. De Hart Brower, for appellant.
Joseph A. Arnold, for respondents.

BARRETT, J.   The appellant is an assignee for the benefit of creditors.   His assignors are his brother and brother-in-law.   The

assignment was preferential. The present action is brought by some six of the judgment creditors of these assignors (Walter & Place), to set aside their assignment upon the ground of fraud. The particular charge is that the assignors fraudulently withheld certain assets from the operation of the assignment, and omitted to specify them in the schedules. The assignors have not denied these charges. Though duly served with the summons and complaint, they have neither appeared nor answered. The plaintiffs moved for an inspection of the assignors' books and papers in the hands of the assignee, and the court below granted the application. It is from the order granting this application that the assignee appeals. The propriety of the assignee's opposition to an inspection of his assignors' and relatives' books, under the circumstances here disclosed, might be questioned. It would seem to be natural that the assignee should throw open the firm's books freely to the inspection of creditors. Why, indeed, should he seek to conceal anything from these creditors? Whether they are attacking the assignment or coming in under it, they are still creditors, and are but seeking payment of what is their due. If the assignment is honest, who can be harmed by the inspection? If it is dishonest, assuming that the assignee is not a guilty party, why should he obstruct creditors in obtaining proof of fraud? He certainly owes to the other creditors, whether preferred or general, no such duty as that of concealing the truth or preventing its ascertainment. An inspection under these circumstances stands upon an entirely different footing from an ordinary inspection, as between parties dealing at arm's length. What is sought here is not an inspection of an adversary's books and papers for the purpose of establishing a contract or other liability, or of proving some fact upon which a liability rests. The liability is here established by the judgment, and the inspection is sought to secure evidence of the defendants' (assignors') independent acts and doings, having no special relation to any particular creditor, but affecting all the creditors generally, and tending to render the plaintiff's judgment ineffectual.

The assignee recognizes the justice of this view of his position, for upon this appeal he disclaims any desire to conceal the books, and he now only insists that the order made at special term was too broad in its scope. The plaintiffs' papers show that the assignors drew from one of their firm banks, upon the very day when the assignment was made, some $800, and that they used a part of this money to pay their private debts; in fact, that they misappropriated this money, and kept it from their creditors. The assignee concedes that an inspection should be granted so far as this alleged misappropriation of $800 is concerned, but he insists that the inspection should be limited to that particular charge.

There are two answers to the contention that the inspection should be thus limited:

1. The limitation would be impracticable, and, if required, would render the inspection useless. It appears that the plaintiffs' attorney has had an opportunity of examining cursorily the ledger and

cashbook of the firm; yet he observed no entry of the drawing of this sum. The assignors, upon their examination in proceedings supplementary to execution, acknowledged that they drew out the money, and paid therewith private debts. But they are not quite clear with regard to any entry of the facts in their books. Oscar Place testified as follows: "What we each individually took that day was entered in the books. I will swear to it. I think it was. If I saw the books, I could tell if it was entered." Walter testified that the money was drawn for the purpose of paying debts. "If any firm debts," he says, "were paid out of this money, it will so appear in the books. I paid some of my private debts out of this money. I got not over $250 of this money." It is doubtful, upon these facts, whether a regular entry of this single item appears in the books at all. It is much more likely that the withdrawal was sought to be concealed by obscure entries, which an expert bookkeeper alone could clarify. Who is to decide when the limit of inspection has been reached? The assignee does not admit the fraudulent retention by his assignors of the sum in question. Nor does he point to any specific entry upon the subject. Shall he be permitted to stand over the plaintiffs or their expert while they are looking for a direct entry, or for collusive entries if there be no direct entry? Shall be be the final arbiter of the successful termination of their search, and stop them when he thinks the proper point has been reached? Or shall he be authorized to pick out the entries which he deems sufficient, and seal up the rest? It seems to us that this would simply frustrate the inspection. The court might as well require it to be made by the assignee himself; and this suggestion serves to illustrate the point already discussed. No such difficulty would arise where an inspection is directed as between ordinary contracting parties, or where it is sought to prove some fact upon which a liability rests. There the party against whom the inspection is ordered can point out the specific item of proof required, or he can give a sworn copy of the document or entry. But proof of the fraudulent retention of property by a failing debtor requires entirely different treatment. He is not apt to spread his fraudulent acts clearly and frankly upon his books of account. He ordinarily diverts attention from them by false entries, or by placing correct entries in incorrect places, or by complete omission.

2. The plaintiffs make out a proper case for a general inspection, and they bring forward the facts as to the $800 to show that their general charges have a substantial foundation, and that their application is not speculative. The plaintiffs' allegations are not limited to the $800. They charge that the schedules failed to state all the property and assets of the assignors, and that part of this property and of these assets was concealed and secreted with the intent to defraud their creditors, and for the purpose of preserving the same for their future use and benefit. The motion papers show that the books and papers contain entries as to these matters, and will show what became of the misappropriated assets. That the plaintiffs have good grounds for these charges is evidenced by the facts with regard to the $800. How many such discoveries, it may be asked, would

the plaintiffs have to make before becoming entitled to a general inspection? If they were able to point to a dozen such, should the inspection be limited to each of such instances separately and specifically? It seems clear that where general allegations of the concealing and secreting of firm assets are made, and these allegations are supported by affidavits to the effect that there are entries in the firm books which will show such concealing and secreting, the affidavits being specific as to a particular sum withdrawn upon a given date, a case is made out for a general inspection. There is nothing speculative about such a discovery. The object is not to look for proof, but to make it.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.